**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JASON KRZYKOWSKI,** *and* **LISA**
**MCCAUSLIN,** *as Administratrix of the*
*Estate of David McCauslin*, *deceased*,

                   **Plaintiffs,**         **1:06-CV-835**
                                          **(GLS/DRH)**

          **v.**

**TOWN OF COEYMANS, TOWN OF**
**COEYMANS POLICE DEPARTMENT,**
*and* **ERIC MULLER,** *individually and as*
*a member of the  Town of Coeymans*
*Police Department*,

                   **Defendants.[1]**
_____

**APPEARANCES:**         **OF COUNSEL:**

**FOR THE PLAINTIFFS:**

DerOhannesian Law Firm     PAUL DEROHANNESIAN II, ESQ.
677 Broadway
Suite 202
Albany, NY 12207

**FOR THE DEFENDANTS:**

Murphy, Burns Law Firm      JAMES J. BURNS, ESQ.
226 Great Oaks Boulevard
Albany, NY 12203

_____

      [1]The Village of Ravena and Village of Ravena Police Department have been dismissed
as defendants in this action by stipulation and order.  (See Dkt. Nos. 33 & 34.)

1

**Gary L. Sharpe**
**U.S. District Judge**

## DECISION AND ORDER

## I. Introduction

This action arises out of an April 8, 2005 police chase of David

McCauslin ("McCauslin") and Jason Krzykowski ("Krzykowski"), which

resulted in McCauslin's death.  (See Dkt. No. 3.)   Pursuant to 42 U.S.C. §§

1983 and 1988, plaintiffs seek compensatory and punitive damages, as

well as attorney's fees, for alleged substantive due process violations

under the Fourteenth Amendment.  *Id*.  State law claims are also asserted.

Pending is defendants' motion for summary judgment under FED. R. CIV. P.

56.  (See Dkt. No. 35.)  For the reasons that follow, the motion is granted.

## II. FACTS[2]

## A.    Background and Events of April 8, 2005

The Town of Coeymans is a rural community located in southern

Albany County, New York.  It is common for residents to ride all terrain

---

[2]The facts are derived from the respective 7.1 statements.  Defendants have failed to admit or deny the additional facts plaintiffs have alleged in their counter 7.1 statement, erroneously contending that rule 7.1 does not allow such supplemental assertions. *See* N.D.N.Y. L.R. 7.1(a)(3).  As local rule 7.1 clearly allows a non-moving party to present additional facts in their 7.1 response, the court deems plaintiffs' supplementary assertions admitted where they are properly supported by record evidence.

vehicles ("ATV") and dirt bikes in the area.  (See Pls'. Counter SMF ¶ 1; Dkt. No. 40.)  Going back to at least 1989, it has also apparently been common for the Coeymans Police Department to pursue operators of such vehicles.  *Id.* at ¶¶ 70-71.

On April 8, 2005, at around 7:35 pm, Coeymans Police Officer Eric Muller ("Officer Muller") received a dispatch report of two dirt bikes and a motorized scooter on Coons Road.  *Id.* at ¶ 12.  Officer Muller responded, and, upon arrival at Coons Road, spoke to a Matt Peseka about riding his dirt bike in the roadway.  *Id.* at ¶ 13.  Officer Muller then drove off in an attempt to locate other dirt bikes he heard operating in the area.[3]  *Id.* at ¶¶ 13, 14.  At 8:25 pm, Officer Muller was sitting in his squad car facing west on State Route 143, attempting to gain a visual on the dirt bikes.  *Id.* at ¶ 14.  (See also Defs'. SMF ¶ 9; Dkt. No. 35.)  Suddenly, he saw two dirtbikes, operated by Krzykowski and McCauslin, pass him in the dark going east on Route 143 at an estimated speed of 55 miles per hour.[4]

---

[3]Plaintiffs' 7.1 statement somewhat confusingly contends that Officer Muller was engaged in a pursuit of two dirt bikes immediately after speaking to Matt Peseka.  However, subsequent 7.1 statements and the admissible record evidence reflect that Officer Muller was merely attempting to locate dirt bikes he heard running in the area, and was not engaged in an actual "pursuit" at this time.  (See Defs'. SMF ¶ 9; Dkt. No. 35, Pls'. Counter SMF ¶¶ 13, 14; Dkt. No. 40.)

[4]The speed limit on Route 143 is 40 to 45 miles per hour.  ( See Pls'. Counter SMF ¶ 37; Dkt. No. 40.)

(See Defs'. SMF ¶¶ 10, 11, 12; Dkt. No. 35.)  Neither bike had headlights or taillights.  *Id.* at ¶¶ 2, 6, 10.  Additionally, Krzykowski's dirt bike was not registered with the State.  *Id.* at ¶¶ 4, 5.  Thus, Krzykowski has testified that he and McCauslin knew their operation of the dirt bikes on public roadways was illegal, and were concerned about being issued a traffic summons.  *Id.* at ¶ 3.

After Krzykowski and McCauslin passed, Officer Muller activated his emergency lights, turned his vehicle around and radioed in to dispatch that he was going to pursue the dirt bikes east on Route 143.  *Id.* at ¶ 14.  (See also Pls'. Counter SMF ¶¶ 15, 18, 19; Dkt. No. 40.)  There is no evidence he knew either rider at the time.  *Id.* at ¶¶ 7, 8.  It was Officer Muller's intention to stop the riders and issue them tickets for violations of the Vehicle and Traffic Law, as they were posing a danger to themselves and others by traveling public roads at night without headlights or taillights.  *Id.* at ¶ 15.  (See also Pls'. Counter SMF ¶ 16; Dkt. No. 40.)  However, he did not believe they were engaged in any other criminal activity.  (See Pls'. Counter SMF ¶ 17; Dkt. No. 40.)

Krzykowski admittedly saw Officer Muller turn around and knew he was being pursued, yet he never considered pulling off the road and

4

stopping.  *Id.* at ¶¶ 17, 18.  Instead, Krzykowski decided he was going to continue traveling east on State Route 143, then turn left on Starr Road in an effort to avoid Officer Muller.  *Id.* at ¶ 19.  However, when Krzykowski and McCauslin reached the intersection of Starr Road both bikes crashed, throwing one rider onto the asphalt and the other onto the south shoulder of Route 143.  *Id.* at ¶¶ 23, 24.  McCauslin later died of injuries he sustained in the accident.

There is no dispute that it was approximately one to two miles from the point at which Officer Muller turned around to the intersection of Starr Road, and that the actual pursuit lasted only a few minutes at most.  *Id.* at ¶¶ 20, 26.  (See also Pls'. SMF ¶ 32; Dkt. No. 40.)  However, the parties disagree as to how closely Officer Muller was pursuing Krzykowski and McCauslin prior to the accident.  Officer Muller's affidavit states that after he turned his vehicle around to pursue, he did not see the dirt bikes again until he came upon one of the riders lying on the road at the intersection. *Id.* at ¶¶ 22, 23.  Contrarily, an eyewitness to the crash, George Heilsberg ("Heilsberg") estimated Officer Muller was pursuing the dirt bikes from a distance of about 75 to 100 feet at a speed of 50 to 55 miles per hour at the time of the crash.  (See Pls'. Counter SMF ¶¶ 35, 38; Dkt. No. 40.)

5

Heilsberg further stated that after he saw one of the dirt bikes crash "literally seconds later the police officer's car came flying down the road." *Id.* at ¶ 34.  Another witness to the pursuit, Debra Lawson, stated she saw the police car right behind the dirt bikes.  *Id.* at ¶ 66.   Importantly, however, Heilsberg has also testified he does not believe Officer Muller's car ever came into contact with the dirt bikes before they crashed.  (See Heilsberg Tr., Pls'. Ex. 13, pgs 81-84; Dkt. No. 40.)  Plaintiffs have not presented any evidence to the contrary.  (See Defs'. SMF ¶ 25; Dkt. No. 35., Pls'. RSMF ¶ 25; Dkt. No. 40.)

**B.   Investigation**

Plaintiffs next assert a series of facts related to the subsequent investigation of the accident.  However, these facts are only tangentially relevant to the current motion.  As such, it is simply noted the Coeymans Police Department failed to properly investigate the crash scene after the accident.  (See Pls'. Counter SMF ¶¶ 39-69; Dkt. No. 40.)

**C.   Town of Coeyman's Pursuit Policy and Lack of Training**

On the date of the accident, § 32 of the Coeymans Police Department's law enforcement manual regarding pursuits and responding to calls (the "Pursuit Policy") was in effect.  *Id.* at ¶ 25.  According to the

Pursuit Policy a pursuit is considered in effect when an officer indicates to the dispatcher that a pursued vehicle is failing to pull over.  *Id.* at ¶ 23.  The dispatcher is then supposed to announce "THE PURSUIT POLICY IS IN EFFECT."  (See Coeymans PD Manual § 32, Pl. Ex. 21; Dkt. No. 40.)  The pursuing officer's subsequent "acknowledgment of th[is] transmission ... indicate[s] that the Officer understands that he should *terminate the pursuit at any point that the danger of the pursuit outweighs the necessity of immediate apprehension.*"  (See Pls'. Counter SMF ¶¶ 24-26; Dkt. No. 40.)(emphasis in original)  According to the Pursuit Policy, factors to be considered in determining whether to terminate the pursuit include, *inter alia*, the seriousness of the suspected charges.  *Id.* at ¶29.  Pursuit of those suspected of serious crimes is viewed as more justifiable than pursuit of persons suspected of traffic infractions.  *Id.*

At the time of the accident, the Coeymans Police Department did not have a systematic policy in place to implement the policies and procedures in its training manual.  *Id.* at ¶ 28.  Nor did the department have a training program for police officers on its Pursuit Policy.  *Id.* at ¶ 2. As such, Officer Muller did not receive training by the Coeymans Police Department on pursuing vehicles or the Pursuit Policy, though he testified he did receive

7

pursuit training through other departments and programs. *Id.* at ¶ 3. (See also Muller Tr., Pls'. Ex. 10, pgs 63-70; Dkt. No. 40.) Additionally, at no time during the April 8, 2005 pursuit was it announced, either by the dispatcher or by the supervising sergeant, Marvin Powell, that the Pursuit Policy was in effect. *Id.* at ¶¶ 20-21.

**D.    History of Pursuits by the Coeymans Police Department**

Finally, as briefly noted above, the Coeymans Police Department has an extended history of pursuing dirt bikes and ATVs on local trails and roads. *Id.* at ¶¶ 70-71. Plaintiffs have submitted multiple depositions from operators of such vehicles, as well as from police officers, recounting past pursuits. *Id.* at ¶¶ 72-75. In fact, sometime between 2000 to 2004, Coeymans made use of a police ATV unit, supervised by former Sergeant John O'Brien ("Sgt. O'Brien"), for the purpose of pursuing off road vehicles. *Id.* at ¶¶ 7-9. Plaintiffs additionally note that prior to the events of April 8, 2005, McCauslin had been chased on multiple occasions by the Coeymans Police, at least some of whom knew he would frequently ride his dirt bike at the dump near his house. *Id.* at ¶¶ 77-83.

## III. DISCUSSION

**A.    Standard of Review**

8

The standard for the grant of summary judgment is well-established, and will not be repeated here.  For a full discussion of the standard, the court refers the parties to its previous opinion in *Bain v. Town of Argyle,* 499 F. Supp. 2d 192, 194-95 (N.D.N.Y. 2007).

**B.     Effect of Sergeant John O'Brien's Unavailability for Deposition**

Initially, the court addresses plaintiffs' contention that summary judgment should be denied because Sgt. O'Brien - who interviewed some of the witnesses to the accident and ran the ATV patrol unit - is unavailable for deposition by reason of his suicide.  (See Pls'. Resp. Brief at 22; Dkt No. 40.)

FED. R. CIV. P. 56(f) allows a court to deny summary judgment when a party opposing the motion "cannot present facts essential to justify its opposition."  Here, however, plaintiffs fail to explain how Sgt. O'Brien's unavailability precludes them from presenting essential facts.  There is no evidence the witnesses Sgt. O'Brien interviewed are unavailable for deposition.  Nor is there evidence Sgt. O'Brien could offer insight into such interviews that the witnesses could not.  Further, the court sees no prejudice flowing from plaintiffs' inability to depose Sgt. O'Brien regarding the Coeyman's ATV patrol unit.  While that unit was tasked with preventing

9

illegal use of dirt bikes and ATVs, it was dissolved before the accident here occurred, and played no part in the events at issue.  Additionally, Officer Muller is not alleged to have ever been a member of the unit.  Therefore, the existence of the ATV unit is irrelevant to this case, except insofar as it is evidence of a municipal custom or policy to pursue ATV and dirt bike operators.  To that extent, the court notes that other members of the ATV unit were available for deposition and were so deposed.  (See Pls'. Counter SMF ¶ 8; Dkt. No. 40.)  Thus, the court rejects plaintiffs' attempt to survive summary judgment by invoking FED. R. CIV. P. 56(f).[5]

## C.   § 1983 Claims Against Officer Muller; Substantive Due Process[6]

Defendants contend plaintiffs' Fourteenth Amendment substantive due process claims must be dismissed in light of the Supreme Court's holding in *County of Sacramento v. Lewis,* 523 U.S. 833 (1998).  Strangely,

---

[5]The court also rejects plaintiffs' contention, made solely at oral argument, that McCauslin's unavailability by reason of his death mandates denial of summary judgment. There is no indication that McCauslin's testimony would provide evidence unavailable through Krzykowski or other witnesses.

[6]Although plaintiffs' briefing in opposition to summary judgment focuses almost exclusively on excessive force claims under the rubric of the Fourth Amendment, plaintiffs' counsel conceded at oral argument that they are not asserting Fourth Amendment claims. (See 10/23/08 Tr. at 10.)  Nor did any Fourth Amendment seizure occur here, as Officer Muller's mere pursuit did not terminate Krzykowski and McCauslin's "freedom of movement through means intentionally applied."  *See County of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998).  As such, plaintiffs' substantive due process claims under the Fourteenth Amendment are not barred by the principle that specific constitutional provisions must be resorted to where available, in lieu of more generalized notions of substantive due process.  *Id.*

plaintiffs' oversized brief contains virtually no discussion of this claim,

despite the fact that it is the only constitutional cause of action asserted in

the complaint.

The Due Process Clause of the Fourteenth Amendment provides that

"[n]o State ... shall deprive any person of life, liberty, or property, without

due process of law."  U.S. CONST. amend. XIV, § 1.  The substantive

component of this mandate ensures "protection of the individual against

arbitrary action of the government."  *Lewis*, 523 U.S. at 845.  Where police

executive action is at issue, as here, "only the most egregious official

conduct can be said to be 'arbitrary in the constitutional sense'"  *Id.* at 846

(quoting *Collins v. Harker Heights*, 503 U.S. 115, 129 (1992)).  Thus, in

order to offend due process, the police misconduct challenged must

"'shock[] the conscience' and violate the 'decencies of civilized conduct.'"

*Id.* at 846 (quoting *Rochin v. California*, 342 U.S. 479, 172-73 (1952)).

In *Lewis*, the Supreme Court was presented with a factual scenario

quite similar to that currently before the court.  A police officer was

returning to his squad car after responding to an unrelated call, when he

witnessed a motorcycle pass him at high speed.  *Id.* at 836.  He

immediately activated his car's lights and siren and gave chase.  *Id.* at 837.

11

Over the course of 1.3 miles the officer pursued the motorcycle through a residential neighborhood at speeds approaching 100 miles an hour from a distance of 100 feet.  *Id.*  The operator of the motorcycle, attempting to evade the officer by weaving in and out of traffic, eventually crashed, spilling the operator and his passenger onto the road.  *Id.*  The officer slammed on his brakes, but his squad car nevertheless hit the passenger, killing him.  *Id.*

In addressing the subsequent substantive due process claim, the Court's discussion focused on two factors in determining when a high speed pursuit is conscience shocking within the meaning of the Fourteenth Amendment.  First, it was noted that a police officer faced with the sudden prospect of a high speed chase must decide whether to pursue "'in haste, under pressure, and frequently without the luxury of a second chance.'"  *Id.* at 853 (quoting *Whitley v. Albers*, 475 U.S. 312, 320 (1986)).  Second, it was recognized that an officer faced with such a decision "must balance on one hand the need to stop a suspect and show that flight from the law is no way to freedom, and, on the other, the high-speed threat to all those within stopping range, be they suspects, their passengers, other drivers, or bystanders."  *Id.*  In light of these pressures, the Court held "that high-

speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by an action under § 1983." *Id.* at 854.  Accordingly, an officer's deliberate indifference, recklessness or lesser level of culpability was found insufficient to offend due process in the context of a high speed chase.  *Id.* at 853.

Admittedly, the present case is somewhat distinguishable from *Lewis,* in that the pursuit here only occurred after a dispatch report of dirt bikes near Route 143 and Officer Muller's attempt to get a visual on such vehicles.  Thus, it could be argued the police conduct here was less spontaneous than that at issue in *Lewis.*  Nevertheless, Officer Muller's pursuit was not preceded by deliberation of such a nature as to render *Lewis* inapplicable.[7]  It was not until Officer Muller visibly witnessed Krzykowski and McCauslin pass him - in excess of the speed limit and without headlights in the dark - that the danger of their conduct could truly be weighed against the risk of pursuit.  Under such circumstances, his decision to pull the dirt bikes over was necessarily instantaneous, and was

---

[7]Additionally, any contention that *Lewis* is inapplicable because Officer Muller never exceeded 55 miles per hour, and thus was not engaged in a "high speed pursuit," is foreclosed by plaintiffs' vigorous and repeated contention that the pursuit was indeed of a high speed variety.  (See Pl. Resp. Mem. at 27; Dkt. No. 40.)

exactly the sort of instinctive judgment to which deference was urged in
*Lewis.*

　　With the applicability of *Lewis* thus established, it is clear Officer
Muller's conduct did not violate plaintiffs' substantive due process rights.
His pursuit of McCauslin and Krzykowski at a speed of 55 miles an hour
covered no more than 2 miles.  (See Pls'. Counter SMF ¶¶ 32, 35; Dkt. No.
40.)  As such, it could not have lasted for more than a couple of minutes;
affording little chance for reflection on the situation.  Further, despite
evidence that Officer Muller was in close pursuit, plaintiffs conceded at oral
argument that there is no indication he hit the dirt bikes or their operators at
any point.  (See 10/23/08 Tr. at 20; see also Heilsberg Tr., Pls'. Ex. 13, pgs
81-84; Dkt. No. 40.)  Thus, the facts of this case are far less extreme than
those held insufficient to establish a due process violation in *Lewis.*  Most
importantly, plaintiffs' brief, while alleging recklessness, gross negligence
and deliberate indifference, fails to present any facts indicating that Officer
Muller intended to cause Krzykowski and McCauslin harm.  (See Pls'.
Resp. Brief at 31-35; Dkt No. 40.)  Indeed, plaintiffs' own 7.1 statement
concedes that "it was Coeymans Officer Muller's intention to follow and
pursue the two dirt bikes being operated by David McCauslin and Jason

14

Krzykowski until they stopped so that he could issue tickets."  (Pls'.

Counter SMF ¶ 16; Dkt. No. 40.)[8]

Thus, Officer Muller's pursuit of Krzykowski and McCauslin did not

"shock the conscience" under the standard established in *Lewis*.

Accordingly, defendants' motion for summary judgment dismissing

plaintiffs' Fourteenth Amendment substantive due process claims as

against Officer Muller is granted.[9]

## D.   Municipal Liability

Pursuant to the case of *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658,

691 (1978), municipal entities may be held liable under § 1983 "when

execution of a government's policy or custom, whether made by its

lawmakers or by those whose edicts or acts may fairly be said to represent

official policy, inflicts" a constitutional injury.  Here, plaintiffs contend the

Town of Coeymans and the Coeymans Police Department are liable under

*Monell* because these entities failed to train their police officers on the

---

[8]This concession neutralizes plaintiffs' contention at oral argument that insidious intent could be drawn from subsequent improprieties in the accident investigation.  Similarly, evidence that McCauslin had been pursued in the past by other Coeymans' police officers is irrelevant to Officer Muller's intent, as there is no evidence that Officer Muller had pursued either McCauslin or Krzykowski in the past, or knew who they were.

[9]As the court has found that Officer Muller committed no constitutional violation it is unnecessary to address the issue of whether he is entitled to qualified immunity.

proper handling of pursuits according to the Pursuit Policy.  However, the

court's finding that Officer Muller did not violate plaintiffs' constitutional

rights is fatal to their *Monell* claims.

Generally, a failure to train claim cannot exist against a municipality

where no individual defendant has committed a constitutional violation.

*See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Amato v. City

of Saratoga Springs*, 170 F.3d 311, 320 (2d Cir. 1999) ("if a plaintiff fails to

show that a constitutional violation occurred in the suit against the

individual officer, the corresponding cause of action against the

municipality will be mooted since a claim of negligent training is only

actionable where some constitutional violation actually occurred").  The

Second Circuit has recognized a narrow exception to this rule only where

"the injuries complained of are not solely attributable to the actions of

named individual defendants."  *Barrett v. Orange County Human Rights

Comm'n*, 194 F.3d 341, 350 (2d Cir. 1999).  Thus, where a municipal body

itself causes a plaintiff constitutional injury through conduct divorced from

any individual defendants' action, municipal liability may lie despite *Heller*.

*See id.* (finding that a municipal commission could be held liable for a

retaliatory discharge, even though individual members could not be,

16

because commission itself had made the termination decision). However, where, as here, allegedly injurious policies and/or customs have manifested themselves only through the constitutionally innocuous conduct of individual defendants there can be no *Monell* liability. *See Matican v. City of New York,* 524 F.3d 151, 154 (2d Cir. 2008) (stating that "the City cannot be liable [for a failure to train] under § 1983, regardless of whether officers acted pursuant to a municipal policy or custom" unless the officers violated the plaintiff's constitutional rights); *Curley v. Village of Suffern*, 268 F.3d 65, 71 (2d Cir. 2001) (finding no municipal liability for a failure to train where individual officers had committed no constitutional violation). Thus, as Officer Muller did not violate plaintiffs' constitutional rights, *Heller* bars the failure to train claims against the municipal defendants.

**E.   State Claims**

The court has jurisdiction over plaintiffs' state law claims under 28 U.S.C. § 1367(a), which provides "the district courts shall have supplemental jurisdiction over all [state] claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." However, where "the district court has dismissed all claims

17

over which it has original jurisdiction" it "may decline to exercise

supplemental jurisdiction."  28 U.S.C. § 1367(c)(3).  In guiding district

court's in the exercise of this discretion, the Second Circuit has set forth the

following factors to consider: "(1) whether state law claims 'implicate [ ] the

doctrine of preemption,' ... (2) 'judicial economy, convenience, fairness,

and comity,' ... (3) the existence of 'novel or unresolved questions of state

law,' ... and (4) whether state law claims 'concern the state's interest in the

administration of its government.'"  *Drake v. Lab. Corp. of Am. Holdings*,

323 F. Supp. 2d 449 (E.D.N.Y. 2004) (quoting *Valencia ex rel. Franco v.

Lee*, 316 F.3d 299, 306 (2d Cir. 2003)).

Here, there is no issue of federal preemption.  Further, as the federal

claims have been eliminated before trial, considerations of judicial

economy, convenience, fairness and comity "point toward declining to

exercise jurisdiction over the remaining state-law claims."  *Lee*, 316 F.3d at

305.  The court also notes that "[t]he issue of general tort liability for

municipalities ... [is often a] fundamental and complex question[] ... best left

to the courts of the state when the early disposition of all federal claims

makes the federal court's resolution of such state-law claims unnecessary."

*Id.* at 308.  Finally, dismissal of plaintiffs' state claims creates no statute of

limitations issue, as N.Y. C.P.L.R. 205(a) provides plaintiffs 6 months to refile an action in state court on such claims. *See also* 28 U.S.C. § 1367(d); DAVID D. SIEGEL, NEW YORK PRACTICE § 52 (4th ed. 2005). Thus, the court declines to exert supplemental jurisdiction over plaintiffs' state law claims, and correspondingly does not address the parties' arguments related to such claims. Accordingly, as all of plaintiffs' claims have been disposed of, their complaint is dismissed in its entirety and judgment will be entered in favor of the defendants.

### IV. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the defendants' motion for summary judgment (Dkt. No. 35.) is **GRANTED** and the complaint **DISMISSED IN ITS ENTIRETY**; and it is further

**ORDERED** that the Clerk of the Court enter judgment and close this case; and it is further

**ORDERED** that the Clerk of the Court provide copies of this Order to the parties by regular mail.

**IT IS SO ORDERED.**

November 24, 2008
Albany, New York

Gary L. Sharpe
U.S. District Judge